**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated, | : : : | Case No. 2:18-cv-190 |
| | : | Judge Watson |
| Plaintiff, | : : | Magistrate Judge Vascura |
| v. | : : | |
| THE SOUTHARD CORPORATION and RENEWAL BY ANDERSEN LLC, | : : : | |
| Defendants. | : : / | |

### FIRST AMENDED CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff Philip Charvat ("Mr. Charvat") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, The Southard Corporation ("Southard"), acting on behalf of Renewal by Andersen LLC ("Renewal by Andersen"), made telemarketing calls to a residential telephone number Mr. Charvat had registered on the National Do Not Call Registry for the purposes of advertising their goods and services.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5. Plaintiff Philip Charvat is a resident of the state of Ohio in this District.

6. The Southard Corporation is a corporation organized in Kansas. Southard makes telemarketing calls into this District and transacts business in this District using the business name Renewal by Andersen of Columbus. The Southard Corporation has a registered agent of R. Joe Southard, located at 1222 10th St., Great Bend, KS 67530.

7. Southard at all times was an Authorized Dealer of Renewal by Andersen acting on its behalf.

8. Renewal by Andersen is a limited liability company organized in Minnesota. Renewal by Andersen itself, and through the third parties it uses such as Southard, engages in business in the state of Ohio and solicits new business in the state of Ohio.

### Jurisdiction & Venue

9. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Plaintiff is a resident of this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims occurred here.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages and injunctive relief. 47 U.S.C. § 227(c)(5).

15. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. *Id.*

16. Because allowing an entity "to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases

without an effective remedy for telemarketing intrusions," the FCC has consistently held that a corporation or other entity "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

## Factual Allegations

17. Southard is a company that sells residential renovation services, including window replacement services.

18. Southard is a dealer for Renewal by Andersen and sells its residential windows. At the time of the calls to Mr. Charvat, Southard was not registered to do business in Ohio with the Ohio Secretary of State under the name "The Southard Corporation" but rather did business on Sawmill Road in Dublin, Ohio under the name "Renewal by Andersen."

19. To generate new clients, Southard relies on telemarketing.

20. That telemarketing involves "cold calling," which are phone calls placed to individuals that Southard does not have a prior relationship with.

Calls to Mr. Charvat

21. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. Mr. Charvat placed his residential telephone number, (614) 895-XXXX (the "Number"), on the National Do Not Call Registry more than five years prior to the calls at issue.

4

23. Despite taking the affirmative step of registering the Number on the National Do Not Call Registry, Southard placed telemarketing calls to the Number on January 24 and January 25, 2018.

24. On January 24, 2018, at 9:15 a.m. EST, Southard placed a telemarketing call to the Number.

25. Sandra Charvat, Mr. Charvat's wife, answered the call. The caller asked for "Phil" and the call disconnected.

26. One minute later, Southard placed a second telemarketing call to the Number.

27. Sandra Charvat again answered the call. The caller identified himself as "Matt" with Renewal by Andersen and claimed he was calling due to an online inquiry relating to a window or door quote. Mrs. Charvat informed "Matt" that she had no knowledge of any online quote request, and the call was ended.

28. "Matt" was actually calling from Southard.

29. At no time did "Matt" identify that he was calling from Southard. Rather, he represented to Mrs. Charvat that he was with Renewal by Andersen.

30. Later that day on January 24, 2018, Southard placed a third telemarketing call to the Number. The call was received at the Charvat home and rang nine times.

31. At no time did Mr. or Mrs. Charvat submit an online request for a window or door quote with Renewal by Andersen or with Southard.

32. Mr. or Mrs. Charvat did not have an established business relationship ("EBR") with Southard or Renewal by Andersen prior to January 24, 2018 or at any time thereafter.

33. Southard did not call the Number on January 24, 2018 on the basis of a purported EBR.

5

34. Southard called the Number based on a lead sold to it by an entity called Broadside Media.

35. On January 25, 2018, Southard placed a fourth telemarketing call to the Number.

36. The call was answered by Mr. Charvat.

37. The caller identified herself as "Amy" and claimed she was with "Renewal by Andersen."

38. "Amy" was actually calling from Southard on behalf of Renewal by Andersen.

39. At no time did "Amy" identify that she was calling from Southard.

40. "Amy" attempted to sell Mr. Charvat windows by "Renewal by Andersen" and even explicitly claimed, "We're Renewal by Andersen."

41. "Amy" gave a website of www.WeLoveOurNewWindows.com.

42. That website claims to be "Renewal by Andersen" an "Andersen Company."

43. Mr. or Mrs. Charvat did not have an EBR with Southard or Andersen prior to January 25, 2018.

44. Southard did not call the Number on January 25, 2018 on the basis of a purported EBR.

45. Southard called the Number based on a lead sold to it by an entity called Broadside Media.

46. On January 26, 2018, Mr. Charvat received a fifth telemarketing call from Southard calling on behalf of Renewal by Andersen.

47. This call was also made by "Amy with Renewal by Andersen."

48. "Amy" identified her company as the "replacement division of Andersen Windows" to again attempt to sell Mr. Charvat windows.

6

49. "Amy" admitted that Mr. Charvat's contact information was purchased from "Broadside Media."

50. Broadside Media is an online lead generation company that sells consumer information.

51. Later that same day, a sixth telemarketing call was made by Southard to the Number. This call was received at the Charvat home but went unanswered.

52. On January 27, 2018, Mr. Charvat wrote to Renewal by Andersen, informed it of the illegal calls at issue, and asked Renewal by Andersen to disclose whether it had some explanation for the illegal telemarketing calls at issue. The letter was sent via both U.S. mail and email and was received by Renewal by Andersen on the date sent.

53. After Mr. Charvat sent this letter, he received a seventh telemarketing call on January 29, 2018.

54. This time, the caller was "Gauge from Renewal by Andersen."

55. "Gauge" claimed to be calling from the "Columbus showroom" and attempted to sell Mr. Charvat replacement Andersen windows.

56. Thereafter, Renewal by Andersen responded to Mr. Charvat's letter and identified Southard as the company that made the disputed calls. Renewal by Andersen also claimed that Mr. Charvat somehow consented to receive telemarketing calls via a website visit to www.renovationzone.com on January 24, 2018. This was the first time Mr. Charvat learned of the involvement of Southard in the illegal telemarketing calls at issue.

57. Having never heard of or visited the renovationzone website, Mr. Charvat then wrote a letter to Southard concerning the calls and this time asked for the IP address and time on January 24, 2018 when the alleged visit had occurred.

7

58. In response to the subsequent letter, Southard alleged that the IP address relating to Ms. Charvat's purported visit to www.renovationzone.com tracked to an IP address with an address of record for Ms. Charvat. Southard claimed that Mr. Charvat's daughter, Allison Charvat, had visited www.renovationzone.com and entered Mr. Charvat's information (including his telephone number) on the website that led to the calls. It failed to respond to Mr. Charvat's request with the IP address and the time of the alleged visit.

59. Southard also threatened to commence legal action against Mr. Charvat and his daughter if he proceeded with this lawsuit.

60. This alleged website visit did not occur. Ms. Charvat is an adult who has not lived at her father's address in more than a decade, whose physical address was located over 500 miles from the purported IP address, who was not shopping for any residential window replacement during 2018 and did not visit the website.

61. Southard later admitted that this allegation was false and was based on a "miscommunication" with Broadside Media.

62. In fact, the information Southard claimed was entered on the website includes an e-mail address that is not believed to exist.

63. Also, the website address www.renovationzone.com is registered to a company in the Cayman Islands called "Uniregistrar Corp.," not Renovationzone.

64. The website landing page for www.renovationzone.com made no mention of Southard or Renewal by Andersen. While that website name is registered, the website itself was inactive on January 24, 2018 and could not have obtained express written consent from anyone on that date.

8

65. At no time did Mr. Charvat or anyone acting on his behalf consent to receive telemarketing calls from the Defendants.

66. At no time did Mr. Charvat have an EBR with the Defendants.

67. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

68. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

69. In fact, prior to the filing of this lawsuit, Plaintiff wrote to Renewal by Andersen asking for any evidence of consent it had to telemarket to the Number.

70. In response to Plaintiff's letter, Renewal by Andersen identified Southard as the company that made the disputed calls.

71. Renewal by Andersen also alleged that there was a website visit to www.renovationzone.com on January 24, 2018, which authorized the calls by Southard to the Number, but as described above, the alleged website visit did not occur.

72. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

73. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

**Renewal by Andersen's Liability for Southard's Telemarketing Activities**

74. The Federal Communications Commission ("FCC") promulgates rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

75. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

76. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

77. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Renewal by Andersen may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd. at 6588 (¶ 37) (internal citations omitted).

78. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

10

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id*. at 6592 (¶ 46).

79. At all times relevant to this Complaint, Southard was an authorized dealer of Renewal by Andersen.

80. At all times relevant to this Complaint, Southard was authorized to sell goods or services offered by Renewal by Andersen and to do so via telemarketing.

81. At all times relevant to this Complaint, Southard was authorized by Renewal by Andersen to hold itself out to the public as Renewal by Andersen.

82. Southard, in fact, did so.  In the various telemarketing calls made to the Number and the Charvat household, Southard represented itself as "Renewal by Andersen."

83. At no time on the telemarketing calls at issue did any telemarketing sales representative identify Southard as the calling party.

84. Southard provided Mr. Charvat with the website https://weloveournewwindows.com when he requested this information in order to identify the caller.  This website refers only to Renewal by Andersen and makes no mention of Southard.

85. In fact, Southard only conducts business, including its marketing efforts, using the d/b/a "Renewal by Andersen" and continues to do so.

11

86. Southard was authorized by contract to represent Renewal by Andersen.

87. Renewal by Andersen provided sales and telemarketing training to Southard employees.

88. Renewal by Andersen had a contractual relationship with Broadside Media Group pursuant to which Southard was provided with leads to call through that telemarketing.

89. Southard did not have a contractual relationship with Broadside Media Group during the class period and was reliant on Renewal by Andersen to provide it with leads to call obtained via Broadside Media Group.

90. During the class period, Renewal by Andersen reviewed or had the power to review the telemarketing scripts used by Southard.

91. During the class period, Renewal By Anderson had the power to discipline Southard.

92. During the class period, Renewal by Andersen had the power to ensure that any telemarketing conducted by Southard was compliant with applicable law.

93. By authorizing Southard to telemarket on its behalf, Renewal by Andersen "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

## Class Action Allegations

94. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

95. The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States who: (a) received two or more telephone calls in a twelve-month period (b) sent by Southard (c) advertising the goods or

services of Renewal by Andersen (d) on a residential telephone number (e) listed on the National Do Not Call Registry for at least 31 days prior to the first call. The temporal scope of the class extends back four years from the date of filing of this Complaint and extends up to the date of trial.

96. Excluded from the class are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

97. The class as defined above is identifiable through phone records and phone number databases.

98. The potential class members number at least in the thousands. Individual joinder of these persons is impracticable.

99. Plaintiff is a member of the class.

100. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

    b. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether Renewal by Andersen is vicariously liable for illegal telemarketing conducted on its behalf by Southard; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendants' actions.

101. Plaintiff's claims are typical of the claims of class members.

102. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the

13

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

103. The actions of the Defendants are generally applicable to the class as a whole and to Plaintiff.

104. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

105. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

106. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Do Not Call Provisions**

107. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

108. The Defendants violated the TCPA by initiating telephone solicitations to persons whose telephone numbers were listed on the Do Not Call Registry. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

109. Moreover, Defendants failed to establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA.

110. The Defendants' violations were willful and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers that are on the Do Not Call Registry, pursuant to the TCPA, 47 U.S.C. § 227(c)(5), applicable regulations, and implementing orders;

B. Because of Defendants' violations of 47 C.F.R. § 64.1200(c), Plaintiff Charvat seeks for himself and the other class members whose telephone numbers were called at least twice within any 12-month period despite being registered with the National Do Not Call Registry, up to $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5);

C. An award of attorneys' fees and costs to counsel for Plaintiff and the class, as permitted by law;

D. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

E. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,

By his attorneys

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
          misny@mmmb.com

Anthony I. Paronich (admitted *pro hac vice*)
Edward A. Broderick (admitted *pro hac vice*)
Broderick & Paronich, P.C.
99 High Street, Suite 304
Boston, MA 02110
Telephone: 508.221.1510
Facsimile: 617.830.0327
E-mail: anthony@broderick-law.com
          ted@broderick-law.com

Matthew P. McCue (admitted *pro hac vice*)
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
Telephone: 508.655.1415
Facsimile: 508.319.3077
Email: mmccue@massattorneys.net

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 11, 2018, the foregoing was filed using the CM/ECF system, which will automatically provide notice to the following by electronic means:

Rand L. McClellan
Douglas A. Vonderhaar
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, OH 43215
rmcclellan@bakerlaw.com
dvonderhaar@bakerlaw.com

                                  **/s/ Brian K. Murphy**
                                  Brian K. Murphy