**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| PHILIP CHARVAT, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE SOUTHARD CORPORATION, *et al.*,<br><br>Defendants. | CASE NO. 2:18-CV-190-MHW<br><br>JUDGE MICHAEL H. WATSON<br><br>MAGISTRATE JUDGE CHELSEY M. VASCURA |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO EXTEND CASE SCHEDULE**

**I.   INTRODUCTION**

Defendants The Southard Corporation and Renewal by Andersen LLC oppose Plaintiff's Motion to Extend Case Deadlines (Doc. No. 74) ("Plaintiff's Motion"). Plaintiff's Motion does not demonstrate the "good cause" required to extend case deadlines under Fed. R. Civ. P. 16(b). Plaintiff took no action to meet or address the deadlines between February 7 and May 20, 2020. The 103 days of inaction began on February 7, when Defendants sent their letter outlining class certification issues to Plaintiffs' counsel. It continued after Plaintiff's counsel and Defendants' counsel discussed the letter in person on February 25. It continued after April 21, when Defendants' counsel emailed Plaintiff's counsel asking for his thoughts about the February 7 letter, and the data sent on February 25. Plaintiff's Motion does not explain his total inaction both with respect to the case schedule and Defendants' repeated emails.

Plaintiff's Motion blames his inaction on Defendants and the "mediation process." (Pl's Mtn., Doc. No. 74, PageID 954). This argument is unconvincing, but not surprising

because Plaintiff also blamed Defendant Southard when moving to amend his complaint after the amendment deadline.[1] Regardless, Plaintiff's inaction is not excused by the "mediation process" because it was designed to meet case deadlines, and the information at the core of the process was provided beginning on February 7, but Plaintiff ignored that too. Even if Plaintiff did not receive Defendants' February 25 email, a detail that Defendants did not know until May 20, Plaintiff offers no justification for not being proactive or his silence and inaction after April 21. In short, Plaintiff cannot blame the Defendants and the "mediation process" for his lack of diligence, while simultaneously ignoring the repeated emails from Defendant that were the cornerstone of that process.

Nor is Plaintiff's Motion justified because good cause existed to extend deadlines in the past. Good cause existed then because the parties were exchanging discovery and Defendants were collecting and analyzing the data - at significant cost and effort. While it took time to prepare the letter and data, that does not excuse Plaintiff's inaction and silence after February 7.

Plaintiff's counsel evidently set this case aside from February 7 to May 20, which is his prerogative. But that is not diligence. And it would be unjust to subject Defendants to the significant costs, fees, and other expenses of class action litigation at this point, simply because Plaintiff believes it is now convenient to do so. Plaintiff's total inaction both in the face of case deadlines, which are ignored and then pass, and Defendants' emails, cannot constitute "good cause." Plaintiff's Motion should be denied.

---

[1] Blaming Defendant for missing the deadline to amend pleadings rings hollow. *See* Section IV(B).

## II. STATEMENT OF FACTS

Most of Plaintiff's Motion is dedicated to events prior to February 7, 2020. (Pl's Mtn., Doc. No. 74, PageID 955-57). But the timeline prior to February 7, 2020 is irrelevant to whether "good cause" exists to extend the deadlines now. Moreover, those events can be succinctly summarized as follows: The parties previously agreed, as did the Court, that good cause existed to move deadlines, prior to their expiration, because the parties were engaging in discovery and Defendants were working on data that both parties believed was relevant.

Defendants, however, will address Plaintiff's Motion's recounting of the July 15, 2019 email regarding the mediation process. Plaintiff's Motion generally recounts the email correctly, but it omits the last sentence of the email, which states, "*Normal Rule 26 discovery would continue to ensure that we stay on schedule.*" (Email from Rand McClellan to Brian Murphy, July 15, 2019) (attached as Exhibit A) (emphasis added).[2]

On February 7, Defendants' counsel sent Plaintiff's counsel an eight-page, single spaced, letter, plus attachments and an excel spreadsheet, analyzing issues that Defendants contend cut against class certification. The effort involved in creating the letter, and the subsequent data, was significant – it took expert analysis,[3] and many client and attorney hours to gather (from both Defendants and third parties), organize, review, summarize, and quality check information for the letter and data. The cover email accompanying the letter notified Plaintiff that additional relevant information would be forthcoming, and Defendants "expect to send [it] to you next week." (Email from Doug

---

[2] In January or early February, Defendants' counsel recalls briefly discussing an informal extension of expert deadlines, but nothing about that discussion justifies Plaintiff ignoring this case for over three months.

[3] Defendant retained an expert to identify a statistically valid sample of calls.

3

Vonderhaar to Brian Murphy and Jonathan Misny, Feb. 7, 2020) (attached as Exhibit B).[4] Plaintiff never responded to this letter.

On February 25, Plaintiff's counsel Brian Murphy and Defendants' counsel Rand McClellan briefly discussed this matter at the Joseph P. Kinneary U.S. Courthouse prior to a final settlement approval hearing in *Johansen v. One Planet Ops, Inc.* No. 2:16-cv-00121-ALM-EPD (S.D. Ohio). During this conversation, Plaintiff's counsel acknowledged receipt of the February 7 letter and stated that Plaintiff's counsel Jonathan Misny was reviewing it. Defendant's counsel told Plaintiff's counsel that the data referenced in the letter was almost ready.

Later that day, February 25, Defendants' counsel sent Plaintiff's counsel the consent and established business relationship ("EBR") data. (Email from Doug Vonderhaar to Brian Murphy and Jonathan Misny, Feb. 25, 2020) (attached as Exhibit C). Plaintiff's Motion states he never received this email. Defendants' counsel's information technology ("IT") team confirmed the email left its servers. And Defendants' counsel did not receive any "bounce back" email or other indication that the email was not received by Plaintiff's counsel. Defendants note these facts not to dispute Plaintiff's representation that Plaintiff did not receive the data, but to emphasize Defendants had no reason to believe that Plaintiff did not receive the data, particularly after Defendants' April 21 email (noted below) that referenced and included the February 25 email.

On April 21, Defendants' counsel sent a follow-up email to Plaintiff's counsel, stating "Following up on this correspondence, please let us know if Plaintiff has any questions regarding our February 7 letter *and/or the documents sent on February 25.*

---

[4] The attachments are not included because they are confidential settlement communications.

4

(attached as Exhibit D) (emphasis added). Importantly, the February 25 email was in the same email chain, immediately below, the April 21 email. Again, Plaintiff never responded.

On May 20, the discovery deadline, Plaintiff's counsel sent a brief email to Defendants' counsel asking to "discuss the case schedule." (attached as Exhibit E). During a call that day, Plaintiff's counsel stated he wanted to move the case deadlines. Defendant's counsel did not agree to extend case deadlines, but agreed to Plaintiff's proposal to a conference with the Magistrate about the issue.[5] Defense counsel did not agree to an extension during this call or at any point thereafter. Moreover, contrary to Plaintiff's Motion, Plaintiff's counsel did not raise the "settlement process" (Pl's Mtn., Doc. No. 74, PageID 957), either in the email or during the call. It was only after Defendants' counsel asked if Plaintiff had any response to the settlement letter did Plaintiff's counsel mention that they received the February 7 letter and the April 21 follow up, but not the February 25 data.

Immediately after the call, Defense counsel resent the February 25 email and its attachments to Plaintiff's counsel. This time, Defense counsel received a "bounce-back" email stating the message was not delivered. Defendants' provided the data to Plaintiff via hyperlink that afternoon.

On May 22, Plaintiff asked for a status conference with the Magistrate. Later that day, the Magistrate's Chambers asked for available dates and a "neutral statement of the issue(s)." Seven days later, on May 29, the Magistrate's Chambers followed up on

---

[5] Plaintiff's Motion states the conference was Defendants' idea (Pl's Mtn., Doc. No. 74, PageID 957). That is not Defendants' counsel's recollection, nor is it consistent with the apparent purpose of Plaintiff's call, which was to avoid briefing the issue. (*See* Exhibit E) ("Are you available this afternoon at all to discuss the schedule in Southard? *We were going to file a motion to reset the deadlines and wanted to discuss.*") (emphasis added).

5

Plaintiff's request for a conference, noting it had not "received a reply to [its prior] email" and inquiring "whether the parties still wish to have a status conference." On June 1, the parties began to confer about the available dates for the conference, but it became apparent by June 2 that the parties could not agree on the neutral statement and would have to brief the issue. Plaintiff's Motion was filed on June 5.

### III. LEGAL STANDARD

"A schedule may be modified *only* for good cause and with the judge's consent." Rule 16(b)(4) (emphasis added). If a party cannot meet a deadline in the court's scheduling order, "he or she can move to amend the scheduling order .... When considering a motion to amend, a district court will examine (1) whether the moving party has shown 'good cause,' and (2) whether the modification will cause the opposing party to experience possible prejudice." *Gatza v. DCC Litig. Facility, Inc.*, 717 Fed. App'x 519, 521 (6th Cir. 2017).

The "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quotation omitted). To show good cause, the moving party must "demonstrate that he or she diligently attempted to meet the original deadline." *Id.* In other words, "the party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines." *Whatever It Takes v. Capital Core, Inc.*, No. 10-cv-72, 2012 WL 12926043, *2 (S.D. Ohio Jan. 23, 2012) (Watson, J.); *Amlotte v. O'Hare*, No. 08-cv-1158, 2010 WL 795358, at *1 (S.D. Ohio Mar. 2, 2010). Of course, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Wagner v. Mastiffs*, No. 2:08-cv-431, 2011 WL 124226, at *4 (S.D. Ohio Jan. 14, 2011) (citation omitted).

6

In addition to the movant's diligence, courts must consider potential prejudice to the non-movant. However, "a lack of prejudice to the opposing party is not equivalent to a showing of good cause." *Schrack v. R+L Carriers, Inc.*, No. 1:10cv603, 2012 WL 441163, *3 (S.D. Ohio June 18, 2012), *report and recommendation adopted*, 2012 WL 966046.

## IV.  ARGUMENT

### A.  Plaintiff Lacks Good Cause to Extend the Case Deadlines.

Plaintiff must show that "despite due diligence [he] could not have reasonably met the scheduled deadlines." *Whatever It Takes*, 2012 WL 12926043, at *2. Plaintiff cannot make this showing because he was not diligent, either with the case deadlines or the "mediation process" he blames for his inaction. Plaintiff never responded to the February 7 email, never inquired about the "missing" data, and inexplicably ignored Defendant's April 21 email asking for an update. Plaintiff's argument is that he patiently waited for information that he completely ignored once it arrived. As of this filing, Plaintiff still has not responded to Defendant's February 7 letter or the data, and only through Plaintiff's Motion did Defendants learn the mediation process has been declared (apparently by Plaintiff) "unlikely to be successful." (Pl's Mtn., Doc. No. 74, PageID 954). While Plaintiff was free to ignore the "mediation process," he cannot cite a process he ignored to justify his lack of diligence with the case deadlines. Plaintiff exhibited an unexplained lack of diligence to both.

This Court and the Sixth Circuit are clear. The "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge*, 281 F.3d at 625. In *Neuhardt v. Charter Commc'ns, LLC*, this Court denied a plaintiff's motion to extend the discovery and dispositive motion deadlines because the plaintiff did not demonstrate diligence in

7

attempting to meet those deadlines. No. 2:17-CV-1019, 2019 WL 2912088, at *2 (S.D. Ohio July 8, 2019) (affirming Magistrate Judge Vascura's determination that good cause was not shown). Even though the plaintiff moved to extend the deadlines on the day they expired, the Court denied the motion because during the 60 days provided by a prior extension, the plaintiff "did not contact Defendant in any manner and failed to take any reasonable measures" to meet the deadlines. *Id.* The Court held that plaintiff's "absence of communication demonstrates [p]laintiff's lack of diligence and granting another extension would reward Plaintiff's carelessness at Defendant's expense." *Id.*

Plaintiff's Motion lacks any explanation for his inaction and silence between February 7 and May 20, 2020. This lack of any explanation is dispositive, because "[w]ithout evidence of some diligence on plaintiff's part" an extension is not proper, even if there is an "absence of prejudice to the opposing party." *Shrieve v. DaimlerChrysler Corp.*, No. 2:05-CV-0446, 2006 WL 1526878, at *2 (S.D. Ohio May 31, 2006). In *Shrieve*, this Court denied a plaintiff's motion to extend the expert disclosure deadlines within the discovery period. Like here, the plaintiff blamed the defendant for the delay, which in *Shrieve* pertained to the defendant not making a vehicle, which plaintiff's expert intended to inspect, available until three months before the expert disclosure deadline. Plaintiff also stated that she needed time to find a new expert. But the plaintiff did not explain the three-month delay between the vehicle being made available and the expert disclosure deadline. The Court denied the plaintiff's motion, even though it was "likely that without an expert witness, plaintiff will be unable successfully to oppose the pending summary judgment motion." *Id.*

In *Rote v. Zel Custom Manufacturing, LLC*, the Court denied a defendant's motion for leave to file a summary judgment motion after the expiration of the dispositive motion

8

deadline. No. 13-cv-1189, 2018 WL 3609496, at *1 (S.D. Ohio July 27, 2018). The defendant argued that the deadline should be extended because the discovery deadline had not expired, and the dispositive motion deadline typically trails the discovery deadline. *Id.* Plaintiffs responded that defendant had not provided any explanation for failing to timely file his motion or seek an extension. *Id.* Magistrate Judge Vascura found that defendant had failed to establish good cause, as he had not offered "*any* explanation" for why, despite his diligence, he was unable to meet the dispositive motions deadline. *Id.* at *2. (emphasis added).

Plaintiff's argument for an extension cannot succeed in the face of Rule 16(b)'s language, the Court's decisions in *Neuhardt*, *Shrieve*, and *Rote,* and the Sixth Circuit's admonition that, to show good cause, the moving party must "demonstrate that he or she diligently attempted to meet the original deadline." *Inge*, 281 F.3d at 625. Plaintiff's conduct between February 7 and May 20 is devoid of any indicia of diligence. In *Neuhardt,* the plaintiff was inactive for 60 days and filed his motion before the deadline expired. Here, Plaintiff was inactive for over 100 days and his motion was filed over two weeks after the discovery deadline. And like *Neuhardt,* Plaintiff did not contact Defendant during this period regarding deadlines or the "mediation process," and despite this absence of communication, now seeks an extension at Defendants' expense. 2019 WL 2912088, at *2. In *Shrieve*, the plaintiff tried to shift blame to the defendant for not making the vehicle available for plaintiff's expert's inspection until three months before the expert disclosure deadline. But the plaintiff there did not explain the three-month delay between the vehicle being made available and the expert disclosure deadline. Thus, the Court denied the plaintiff's motion, even though it was would likely result in the defendant's summary judgment motion being granted. *Shrieve*, 2006 WL 1526878, at *2.

Here, Plaintiff bemoans Defendants' "delays" in providing the information, but offers no explanation why Plaintiff ignored it once it arrived. And, like *Rote*, Plaintiff has not offered "any explanation" for his inaction between February 7 and May 20, not to mention his delay in responding to the Magistrate's Chambers for the neutral statement, which prompted the follow up from Chambers, or the delay in moving to extend the deadlines.

Plaintiff may argue he could not respond to the February 7 letter without the consent and EBR data. But that is not a valid excuse. The letter was a substantive summary of the consent and EBR data. It explained in detail Southard's basis for contending that it has evidence of consent, an EBR, or other TCPA defenses for the vast majority of calls in the call records, and included a spreadsheet, with 384 rows and 10 columns summarizing the data. Even if Plaintiff did not receive the data, the letter and spreadsheet contained a significant amount of information to review, and respond to, in furtherance of the "mediation process."

The proverbial "ball was in Plaintiff's court" from February 7 – over three months before the discovery deadline. In that period, Plaintiff neither tried to meet the deadlines, seek to amend them, contact Defendants, nor respond to Defendant's repeated emails. Complete inaction is not diligence. Plaintiff's Motion does not identify any "good cause" to extend the deadlines, good cause is not present, and Plaintiff's Motion should be denied.

### B. Plaintiff's Repeated Strategy of Blaming Defendants for Plaintiff's Motions for Leave is Unconvincing.

Plaintiff's Motion implicitly admits inaction, but blames Defendants for such inaction. These arguments are unconvincing. First, with respect to the period before February 7, Plaintiff blames Defendants for the prior joint motions for extensions, stating that it took months for Defendants to provide the information. (Pl's Mtn., Doc. No. 74,

PageID 958). But the extensions are a non-sequitur; good cause existed for the prior extensions, [6] precisely because Defendants were working on that data, while simultaneously issuing and responding to discovery.[7]

Plaintiff's Motion does not (and cannot) state that Defendants' letter and data were not major undertakings. As noted above, the effort required gathering data from both Defendants, plus third parties, required expert analysis to identify the valid sample, and it was enormously expensive and time-consuming to review, organize, quality check, and prepare the letter and data for Plaintiff's review. The letter sent on February 7 was an eight-page, single spaced letter, that outlined defenses and other individualized issues, with respect to a valid sample of calls that Plaintiff contends violated the TCPA. Plaintiff may disagree with the letter, or the data, but Plaintiff cannot argue that it was not a substantial effort. In short, Plaintiff's inaction after February 7 is not justified because the parties agreed, with the Court's blessing, to prior extensions.

Second, Plaintiff seemingly argues Defendants are responsible for the delay because of the "two-step mediation process" and that "Defendant did not finish providing the information until May 20, 2020." (Pl's Mtn., Doc. No. 74, PageID 958). Putting aside that discovery was supposed to (and did) continue under that process (*see* Exhibit A), Plaintiff cannot hold Defendants responsible for ignoring both the February 7 letter and the April 21 follow up. And, as noted above, the letter was enough for some sort of

---

[6] *See, e.g.*, 3rd Jt. Mtn. to Extend Deadlines, Doc. No. 68 ("Seek[ing] an extension so that [the parties] can continue to analyze cell data and consent information necessary for settlement discussions."); Order Granting 3rd Jt. Mtn. to Extend Deadlines, Doc. No. 69 ("For good cause shown, the parties' [motion] is GRANTED.").

[7] For example, Defendant Renewal received Plaintiff's Second Set of Discovery Requests on September 30, 2019; responded on November 6, 2019; and exchanged meet-and-confer correspondence with Plaintiff's counsel in December 2019 and January 2020.

11

response. At a minimum, Plaintiff should have sprung into action immediately after the April 21 email, but Plaintiff did nothing.[8]

Plaintiff's Motion tries to skirt the April 21 email, stating it caused "confusion as to when or where any such additional documents had been produced." (Pl's Mtn., Doc. No. 74, PageID 957). This is particularly unconvincing. A month is a long time for anyone - much less sophisticated TCPA plaintiff class action counsel - to be confused over a two-sentence email. Moreover, there is no legitimate basis for confusion because the April 21 email expressly referenced the February 25 data, and the February 25 email was immediately below. This purported "confusion" was only "cleared up" on May 20 because that was the discovery deadline, and the date on which Plaintiff's counsel called Defendants' counsel to discuss a case schedule extension. It's anyone's guess as to how long this confusion would have persisted had there not been an intervening deadline.

Plaintiff's silence after April 21 continued Plaintiff's pattern of inaction since February 7. Plaintiff cannot logically argue the "mediation process" is to blame for his inaction, when he completely and repeatedly ignored the information that was the cornerstone of the process. Stated differently, Plaintiff cannot excuse his lack of diligence by citing a process in which he obviously did not participate.

Plaintiff had a plethora of options that could have demonstrated some diligence. He could have: a) rejected the February 7 letter out of hand and pressed forward; b) acknowledged receipt of the letter, but stated he reserved a final decision until he

---

[8] Plaintiff states, in footnote, that he needed the "consent and EBR data" to finalize his expert report to be filed with the Court. (Pl's Mtn., Doc. No. 74, PageID 955). This statement is both puzzling and troubling because the data was not intended for Plaintiff's expert report, and mediations are confidential and the sample data was sent as part of a confidential settlement communication.

12

received the data; c) responded to the letter by stating that he will need time to review and will seek an extension; or d) some combination thereof. Instead, Plaintiff took no action whatsoever. Defendants are not "us[ing] [their] own delay to [their] advantage by opposing any additional time for Rule 26 discovery." (Pl's Mtn., Doc. No. 74, PageID 959). Instead, Plaintiff is attempting to shift blame to Defendants' for their complete and unexplained inaction.

Notably, this is not the first time Plaintiff missed a deadline, sought leave to amend the deadline, and blamed Defendants. On November 20, 2018, Plaintiff moved for leave to amend the complaint to add Renewal by Andersen, LLC as a defendant, three weeks after the deadline to amend pleadings had passed on October 30, 2018. (Prelim. Pretrial Order, Doc. No. 14). Plaintiff's motion for leave to amend the complaint was filed after Defendant filed its motion for judgment on the pleadings, which argued an EBR existed between the parties. (Def.'s Mot. For J. on the Pleadings, Doc. No. 19). In his motion for leave to amend, Plaintiff justified his belated motion by labeling Southard's Motion for Judgment on the Pleadings "meritless"[9] and falsely accusing Southard of "gamesmanship" regarding the calls that Defendant Southard previously disclosed in discovery and "Renewal by Andersen's involvement in the calls" to Plaintiff. (Pl's Motion for Leave to Amend Complaint, Doc. 21, PageID 120). The accusation was baseless for numerous reasons, including because Plaintiff's original complaint was rife with references to Renewal by Andersen. (*E.g.*, Compl. ¶¶ 21-26, Doc. 1, PageID 4).[10]

---

[9] Defendants ultimately refiled the motion as a partial motion for judgment on the pleadings, which was granted in part. (Def.'s Mot. for Partial J. on the Pleadings, Doc. No. 36); (Order on Def.'s Mot. For Partial J. on the Pleadings, Doc. No. 67).

[10] Plaintiff also represented that he wanted to amend the complaint to add additional calls from Southard to Plaintiff. Those calls were disclosed to Plaintiff on August 24, 2018, more than two months prior to the deadline for amending his Complaint.

Plaintiff's repeated attempts to blame Defendants is surely wearing thin. Regardless, Plaintiff's previous motion for leave to amend after the deadline cuts against whether "good cause" exists for Plaintiff's Motion here. *See Nyarkoh-Ocran v. Home Depot USA, Inc.,* No. 2:13-cv-1120, 2014 WL 5305544, *4 (S.D. Ohio Oct. 15, 2014) (finding that a plaintiff's repeated failure to meet deadlines in the past (*i.e.*, its deadline to file a response to the motion for summary judgment) was a factor in the court's good cause analysis for extension of a different deadline (*i.e.*, the discovery deadline))

Finally, implicit in Plaintiff's Motion, which begins with the alleged scope of "illegal" calls and ends with an appeal to "public policy," is that Plaintiff's inaction should be excused because this is a putative class action. But, as demonstrated in *Shrieve*, "the potential for 'injustice' to the moving party is not a necessary consideration when determining whether good cause exists for modifying a scheduling order under Rule 16(b)." *JS Prods., Inc. v. Standley Law Group, LLP*, No. 2:09-CV-311, 2010 WL 11538457, *3, *aff'd*, 418 Fed. App'x 924 (Fed.Cir.2011). Defendant rejects Plaintiff's allegations of wrongdoing. But more importantly for the purposes of Plaintiff's Motion, that Plaintiff purports to bring his claims on behalf of the class should prompt diligence, not excuse its absence. Plaintiff cannot legitimately blame his inaction on Defendants.

### C. Defendants Would Suffer Prejudice.

Defendant expected a response after it submitted the letter on February 7. According to Plaintiff's Motion, he had been impatiently awaiting the information for months. What Defendants did not expect was to be ignored. Plaintiff's total silence in the face of the February 7 and April 21 emails, which Plaintiff admits to receiving, and the February 25 email that Defendant had no reason to believe was not received by Plaintiff,

14

led Defendants to believe that the information had been reviewed by Plaintiff and that Plaintiff had agreed that there were significant impediments to class certification.

Instead, it appears that Plaintiff simply ignored the letter and data, and now casually seek to reopen discovery – the burden of which will fall disproportionately on Defendants. Plaintiff's counsel had the right to ignore this case from February 7 to May 20, but that is not diligence, and Plaintiff's choice should have consequences. And it would be unjust to subject Defendants to the costs, fees, and other expenses of class action litigation at this point, just because Plaintiff believes it is now convenient to do so.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Extend Case Schedule should be denied.

Respectfully submitted,

*/s/ Rand L. McClellan*
Rand L. McClellan (0079266), Trial Attorney
Douglas A. Vonderhaar (0087933)
Katherine R. Johnston (0097829)
Baker & Hostetler LLP
200 Civic Center Drive, Suite 1200
Columbus, Ohio 43215-4138
Telephone: (614) 228-1541
Facsimile: (614) 462-2616
Email: rmcclellan@bakerlaw.com
dvonderhaar@bakerlaw.com
kjohnston@bakerlaw.com

*Attorneys for Defendants*
*The Southard Corporation*
*and Renewal by Andersen LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2020, a copy of the foregoing Opposition to Plaintiff's Motion to Extend Deadlines was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.

Brian K. Murphy, Trial Attorney (0070654)
James B. Hadden (0059315)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
hadden@mmmb.com
misny@mmmb.com

Edward A. Broderick (admitted *pro hac vice*)
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(508) 221-1510
ted@broderick-law.com

Matthew P. McCue (admitted *pro hac vice*)
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
mmccue@massattorneys.net

                                       */s/ Rand L. McClellan*
                                       Rand L. McClellan (0079266)
                                       *Attorney for Defendants*
                                       *The Southard Corporation and Renewal by Andersen LLC*